UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In Re DENTAL SUPPLIES ANTITRUST                    **ORDER**
LITIGATION,                                        CV 16-696 (BMC) (GRB)


------------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge**:

      Before the undersigned is a motion[1] by liaison counsel for the Class Action plaintiffs in

this antitrust action, requesting amendment of the existing Confidentiality Order to include an

"Outside Attorney's Eyes Only" designation.  DE 157-1.  Said motion was referred to the

undersigned by the Honorable Brian M. Cogan.  *See* Electronic Order dated March 15, 2017.

The request emanates from a subpoena served upon non-party Amazon.com ("Amazon") by

plaintiffs' counsel, seeking, in relevant part, "documents regarding Amazon's contract

negotiations with dental supplies manufacturers."  DE 157-1 at 2.  The instant application

follows concerns raised by Amazon's counsel that the subject documents, which would include

highly confidential pricing information and business terms, could be viewed by defendants' in-

---

[1] As the parties recognize, this motion constitutes a discovery dispute subject to this District's
meet and confer rule. *See* Local Rule 37.3; *see also* Fed. R. Civ. P. 37(a)(1) and 26(c)(1).  "To
satisfy the Rule's meet-and-confer requirement, the certification must set forth ... essential facts
sufficient to enable the court to pass a preliminary judgment on the adequacy and sincerity of the
good faith conferment between the parties, such as the names of the parties who conferred or
attempted to confer, the manner by which they communicated, the dispute at issue, as well as the
dates, times, and results of their discussions, if any."  *Milton Abeles, Inc. v. Creekstone Farms
Premium Beef, LLC*, No. CV 06-3893 (JFB) (AKT), 2009 WL 2495802, at *3 (E.D.N.Y. Aug.
12, 2009).  By any measure, the parties' efforts here fall far short of this standard.  *See* DE 157-1
at 3 ("Plaintiffs wrote to Defendants . . . offering to meet and confer [but] none of the []
Defendants responded); DE 158 ("Patterson and Schein, however, believed their position was
conveyed by Benco's [written] response").  In order to keep this complex matter on schedule, the
undersigned has opted to overlook this failing.  The parties are cautioned, however, that this
courtesy will not be extended again.  All future efforts to comply with the meet-and-confer
requirement will involve actual human conversation between and among counsel.

house counsel under the existing confidentiality order.  *See* DE 127.   In the motion, plaintiffs

cite compelling evidence which helps explain Amazon's concerns.  *See generally* DE 157-1.

Defendants oppose this application on several grounds.  First, defendants claim that

plaintiffs lack standing to file the motion. DE 158 at 1.  Second, defendants argue that plaintiffs

have failed to demonstrate good cause sufficient to justify modifying the confidentiality order.

*Id*. at 2.   Third, defendants suggest that granting the request would substantially burden and

prejudice defendants.  *Id*. at 3.

For the following reasons and to extent described herein, the motion is granted.

## DISCUSSION

### Standing

Defendants' standing argument is readily dispatched.  The only citation offered in

support of this position is a partial quotation of Rule 26(c)(1), by which defendants suggest that

the Rule "entitles only '[a] party or any person from whom discovery is sought' to move for a

protective order of the type that class plaintiffs seek."  *Id.* at 1 (quoting Fed. R. Civ. P. 26(c)(1)).

Generally where "the burden of literal compliance with this subpoena falls to a third-party, [a]

party] lacks standing to oppose [a subpoena] on undue burden grounds." *Malibu Media, LLC v.

Doe,* No. 15-CV-3504 (JFB) (SIL), 2016 WL 4444799, at *6 (E.D.N.Y. Aug. 23, 2016); *cf. In re

Application of FB Foods, Inc.,* No. M8-85 (JFK), 2005 WL 2875366, at *1 (S.D.N.Y. Nov. 2,

2005) ("Absent a showing of privilege or privacy, a party ordinarily lacks standing to challenge a

non-party subpoena with a motion for a protective order or to quash.")

This, however, is a distinctly different situation.  Plaintiffs are not seeking to quash a

subpoena -- indeed, plaintiffs served the subject demand.  Rather, the instant application seeks to

modify the existing confidentiality order in an effort to help facilitate compliance with a

subpoena.   Courts have distinguished between protective orders seeking to quash a third party

subpoena and setting limitations on the use of information produced pursuant to a subpoena. For example, in *Funai Elec. Co., Ltd. v. Orion Elec. Co., Ltd*., Nos. 02-Civ. 2605 (AGS) (JCF); 01 Civ. 3501 (AGS) (JCF), 2002 WL 31413681, at *1 (S.D.N.Y. Oct. 25, 2002), which presented similar facts, Magistrate Judge Francis found that "failure of the third-parties to mount their own attack on the subpoenas indicates, however, that Orion's claims of burden and overbreadth are unsubstantiated." *Id.* Notwithstanding this determination, the court held that "[n]evertheless . . . production shall be made in accordance with the protective order in this case." *Id.* Insofar as the outcome of the instant motion affects their ability to prepare and present their case, plaintiffs have standing to seek modification of the protective order.

Even assuming, *arguendo*, that plaintiffs lack standing to make the instant application, the Court retains the discretion to modify or amend a protective order *sua sponte*, a power it retains even after dismissal of the action. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133,142 (2d Cir. 2004) ("A district court . . . acts within its jurisdiction when it modifies or vacates a protective order . . . irrespective of whether it does so before or after a stipulation of dismissal has been filed"). Given the dictates of Rule 26, exercise of such discretion is highly appropriate under these circumstances. *See* Fed. R. Civ. P. 26(c)(1)(G) (empowering the court to "issue an order to protect a party or person [by] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way"). In a competitive market environment, pricing data, such as the information at issue here, can be among the most sensitive commercial information. *See PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1265 (7th Cir. 1995) ("pricing architecture is highly confidential and would be extremely valuable to a competitor"). In these circumstances, the protection of important business interests of a third party – here the confidential information of Amazon – demands that

the Court take steps to prevent the unfair disclosure of such information, irrespective of how that concern was brought to the Court's attention.

### Good Cause

"[I]nformation may be subject to protection from discovery because of its commercial value. The most common situation is that in which the producing party is able to demonstrate that the dissemination of confidential information will place it at a competitive disadvantage. In these circumstances, the commercial value of the information at issue can generally be protected by a protective order limiting the purposes for which the information can be used and the extent to which it can be disseminated." *Cohen v. City of New York*, 255 F.R.D. 110, 118 (S.D.N.Y. 2008). In evaluating a proposed protective order designed to safeguard competitive information, one court held:

> Where a party seeks a protective order restricting the scope of discovery of technical, proprietary information, the court should balance ... the interests in full disclosure of relevant information and reasonable protection from economic injury. Relevant considerations in striking this balance include: 1) whether the person receiving the confidential information is involved in competitive decision making or scientific research relating to the subject matter of the patent, 2) the risk of inadvertent disclosure of proprietary information, 3) the hardship imposed by the restriction, 4) the timing of the remedy and, 5) the scope of the remedy. The competing interests to be evaluated in determining the outcome of such a dispute are one party's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors.

*Infosint S.A. v. H. Lundbeck A.S.*, No. 06 Civ. 2869 (LAK) (RLE), 2007 WL 1467784, at *2 (S.D.N.Y. May 16, 2007) (denying application for "Outside Counsel Eyes Only" designation where in-house counsel not involved in competitive decision-making).

Counsel for defendants assert that the "Attorney's Eyes Only" designation in the existing confidentiality order is sufficient to protect "certain (unspecified) Amazon documents that

Amazon 'does not want the Defendants' employees to view,'" because "the only employees at issue here are a limited number of in-house **attorneys** for each defendant." DE 158 at 2 (emphasis original).  Defendants' counsel correctly points out that, at least presumably, the in-house "attorneys are members of state and federal bars, subject to professional responsibility requirements, and take seriously their obligations under the existing Confidentiality Order."  *Id.* at 2-3.

The problem here, though, is that "in-house counsel" is a position that comes in many flavors.  The duties and responsibilities of an attorney working for an enterprise may encompass transactional work, competitive decision-making, compliance, securities disclosure, the conduct or supervision of litigation, or any combination thereof.  "In-house counsel wear a variety of corporate hats: lawyer, business advisor, corporate officer and dealmaker, to name just a few." Anna Rotman, *Preserving Privilege When In-House Counsel Wear Multiple Hats*, Texas Lawyer, July 14, 2014.  Clearly, then, the duties of each affected in-house attorney must be considered before this argument can hold water.  "If counsel is determined to be involved in competitive decision-making, the issue is whether there is a demonstrated  need for access to the documents sufficient to outweigh the concerns such access gives rise to."  *Infosint,* 2007 WL 1467784, at *5 (citing *Quotron Systems, Inc. v. Automatic Data Processing, Inc.,* 141 F.R.D. 37, 40 (S.D.N.Y. 1992)).  Given that defendants have not provided any information about the individual attorneys at issue, the Court is simply not in a position to make this determination.

It is for these reasons that defendants' reliance upon *United States Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed.Cir.1984) is somewhat misplaced.  In that case, the court premised its determination that it was inappropriate to exclude in-house counsel based upon "present in-house counsel's divorcement from competitive decisionmaking."  *Id.*  In fact, the

court explicitly held that "[i]n a particular case, *e.g.,* where in-house counsel are involved in competitive decisionmaking, it may well be that a party seeking access should be forced to retain outside counsel or be denied the access recognized as needed." *Id.* Absent information on this point, the determination cannot be made.

### Burden

Finally, defendants contend that the limitation proposed imposes an undue burden upon them, hampering their ability to effectively defend the case. DE 158 at 3 ("The ability of in-house attorneys to consider such evidence and discuss it with outside counsel is necessary for each defendant to develop litigation strategies, to make litigation decisions, and to advise internal decision-makers who do not have access to the confidential litigation record"). As noted, the Court is required to balance "the interests in full disclosure of relevant information and reasonable protection from economic injury." *Infosint*, 2007 WL 1467784, at *2. In this case, the Court must weigh the risks of economic injury to Amazon against the burdens imposed on defendants by limiting disclosure to outside counsel.

Several factors relevant to striking this balance remain unexplained in the scant factual record here. One is the relative level of involvement of in-house counsel and outside counsel in the defense of the instant litigation. "A confidentiality order that excludes in-house counsel may be found to cause minimal prejudice when '[o]utside counsel has been involved in this litigation from the beginning and is fully familiar with the facts.'" *Infosint,* 2007 WL 1467784, at *5 (quoting *Sullivan Mktg., Inc. v. Valassis Commc'ns, Inc.*, No. 93 Civ. 6350 (PKL),1994 WL 177795, at *3 (S.D.N.Y. May 5, 1994)). Additionally, defendants have failed to proffer any description of firewalls or other protections that would be put in place to help ensure the security of the subject data. *Id.* ("When the challenged counsel is also litigation counsel, courts have

permitted access, but with controls tailored to prevent accidental disclosure") (citing *Motorola, Inc. v. Interdigital Tech. Corp.,* No. Civ. A 93-488 (LON), 1994 WL 16189689, at *4 (D. Del. Dec. 19, 1994) and *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, No. Civ. A. 03-484 (KAJ), 2004 WL 1196965, at *2 (D. Del. May 25, 2004)).  As noted in *United States Steel*, "status as in-house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access."  730 F.2d at 1469.  At the same time, that case, decided in 1984, did not have to grapple with the security of information electronically sent to or stored in the integrated I.T. systems commonly used by in-house counsel.

The larger problem with this argument is that its fundamental premise remains in the realm of the hypothetical.  No party to this litigation has yet seen the subject data, so there is, as yet, no way to know whether it is critical to the formulation of a defense, entirely irrelevant or something in between.  Similarly, until the information is reviewed, the severity of the risk of economic injury cannot be fully measured.  On the bright side, however, the information can be obtained and reviewed, and the issues raised are not irremediable.

Accordingly, the Court grants the subject application, authorizing the addition of an Outside Attorney's Eyes Only designation to the confidentiality order.[2]  The subject information may be obtained and, as appropriate, so designated, and then reviewed by outside counsel.  After review, should any party believe that the designations made are inappropriate, or that the significance of the information is such that some accommodation must be made to afford access to one or more in-house attorneys, such party may – after conferring in good faith with opposing

_____

[2] To be clear, this Order is limited to granting leave to submit an amended confidentiality order as described herein.  The Court shall not wordsmith that Order here.  Rather, the parties are to meet and confer, and agree upon appropriate language.

counsel – apply to the undersigned for further relief. Should such occasion arise, counsel

representing Amazon are not only welcome, but encouraged, to make appropriate filings (under

seal if necessary) and participate in any argument. Counsel for plaintiffs shall serve a copy of

this Order and any future relevant motion papers upon counsel for Amazon.

**SO ORDERED**

Dated: Central Islip, New York
     March 27, 2017

                            /s/ Gary R. Brown
                            GARY R. BROWN
                            United States Magistrate Judge