UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re DENTAL SUPPLIES ANTITRUST LITIGATION | **MEMORANDUM DECISION AND ORDER**<br><br>16 Civ. 696 (BMC)(GRB) |

**COGAN**, District Judge.

Before me is defendant Burkhart's motion to dismiss plaintiffs' Second Consolidated Class Action Complaint (the "Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(2). Burkhart argues that, whether the Court considers Burkhart's conduct or the conduct of a group purchasing organization ("GPO") that sold Burkhart products, Burkhart has no New York presence and does not transact business sufficient to provide the Court with personal jurisdiction under New York's long-arm statute and consistent with the Due Process Clause. Subsequent to the parties' briefing on the motion to dismiss, the Supreme Court resolved <u>Bristol-Myers Squibb Co. v. Superior Court of California</u>, 137 S. Ct. 1773 (2017), which considered the question of specific jurisdiction, and the Court requested additional briefing. For the reasons that follow, the Court concludes that it has no personal jurisdiction over Burkhart, and the motion to dismiss is granted.

## BACKGROUND

### I. The Allegations

Plaintiffs are a group of dental practices and dentists. Defendants Henry Schein, Benco, and Patterson are the three largest distributors of dental supplies and equipment in the United States, collectively controlling roughly 85% of the market, while defendant Burkhart is a minor

distributor.  Specifically, Henry Schein currently holds 41% of the market, Patterson holds 34%, and Benco has approximately 10%.  In contrast, Burkhart holds about 3% of the national market.

The Complaint broadly alleges that defendants have engaged in conduct that has led to higher prices for dental supplies and eliminated competition between defendants, thereby keeping their profit margins artificially high.  The Complaint alleges a *per se* illegal agreement not to compete on price, and this agreement was implemented through three separate mechanisms:  margin- and price-fixing, anti-poaching agreements, and group boycotts.  Through these mechanisms, all four defendants blocked entry into the market for new competitors who would have charged lower prices for dental supplies and taken market share from defendants.

**Margin- and Price-Fixing**.  Plaintiffs allege that defendants had an agreement not to compete on prices so as to artificially inflate prices and maintain high margins.  As far back as 2005, defendants agreed to charge margins on dental supplies and equipment between 26% and 28%.  Defendants have raised these margins every year, and currently the cartelized margins are 35% or higher.

**Anti-Poaching Agreements**.  In an effort to further their agreement not to compete on prices, defendants also agreed not to try and poach each other's sales employees.  For example, in February and March 2012, the President of Henry Schein and a Managing Director of Benco exchanged text messages regarding Benco's hiring of a former Henry Schein sales representative.  Benco's employee wrote, "We agreed that she would sit even though she didn't have a contract.  And she did sit, even longer than the agreement says.  We never talked about whether she counts toward the limit."  A representative of Benco described the agreement as an ongoing "gentlemen's agreement" not to actively recruit one another's sales representatives.

**Market Boycotts**.  Plaintiffs also allege that defendants exerted pressure on dental supply manufacturers, as well as other industry players, to prevent their competitors from entering the market and undercutting defendants with lower prices.

Plaintiffs allege that "Burkhart is plausibly implicated in at least the first and third components," that is, the price-fixing and market boycotts.  Specifically, as to the price-fixing, plaintiffs point to a 2008 conversation between Jack Powers of Burkhart, Mark Lowery of Henry Schein, and Skip Pettus, then of Archer & White and Dynamic Dental, which depicts a cartel running "across the industry" with the express aim that dental distributors "play ball together" so "the doctor gets it for the same price no matter who they buy it from."  Mr. Powers of Burkhart then replied that they "have to be very careful, [because] if a customer doesn't like us, they could have us all up on price fixing."

As to the boycott, plaintiffs allege that defendants Henry Schein and Burkhart exerted pressure on manufacturer Pelton & Crane in January 2008 to cut off Archer & White because of Archer & White's lower 15% margins on dental products.

## II. <u>Burkhart's Forum Contacts</u>

Burkhart is a regional company with a geographic footprint exclusively in the western United States.  Burkhart has offices in 11 states and regularly services customers in 17 states, all of which are west of the Mississippi River.

Burkhart does make some sales to other states, but the number of sales is far fewer.  Relevant here, prior to 2014, Burkhart never made any sale to New York dentists.  Starting in 2014, Burkhart made some sales to New York dentists, but very few.  For example, from January 2016 through October 2016, Burkhart made sales to 14 dentists in New York comprising approximately 0.07% of Burkhart's nationwide sales by volume.

Important to note, however, is that Burkhart's sales to these dentists were not direct; rather, Burkhart's sales were made entirely through a Washington entity, Kois Tribal Management, Inc. ("Kois"), one of the largest dental GPOs in the country, for which Burkhart is the exclusive supplier. Kois is a separate entity from Burkhart, and Kois alone decides which members to accept into its GPO. Burkhart exercises no control or influence over Kois' efforts to acquire members. Burkhart has no written or ongoing contractual relationships with any dentists in New York, and any sales to New York are through Kois alone. Even Kois' sales to New York dentists is small – Burkhart's overall sales to New York Kois members through October 2016 accounted for only 1.45% of all Kois sales.

Burkhart employees have not visited any New York dentists in connection with its sales, and Burkhart is not contractually required to perform any services regarding any sales made to New York dentists through Kois. By contrast, Kois members within Burkhart's western footprint receive the added benefit of Burkhart's ongoing services, including physically sending representatives to members' offices.

Additionally, the contract between Burkhart and Kois (the "Kois Contract") is governed by Washington law and contains a mandatory Washington forum selection clause.

## DISCUSSION

### I.  Standard of Review

It is well-established that, on a motion to dismiss pursuant to Rule 12(b)(2), the "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010) (citing In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (*per curiam*)). To defeat a jurisdiction-testing motion, the plaintiff's burden of proof "varies

depending on the procedural posture of the litigation." Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013) (internal quotation marks omitted). At the pleadings stage, a plaintiff need only "'make a *prima facie* showing that jurisdiction exists.'" Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 167-68 (2d Cir. 2015) (quoting Licci *ex rel*. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013)).

If the court considers only pleadings and affidavits, the plaintiff's *prima facie* showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." In re Terrorist Attacks on September 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted). Courts may rely on materials outside the pleadings in considering a motion to dismiss for lack of personal jurisdiction. See DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001).

Moreover, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2012) (internal quotation marks omitted). If the parties present conflicting affidavits, however, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993).

## II. Personal Jurisdiction

Plaintiffs recognize that Burkhart is not "at home" in New York, such that the Court does not have general jurisdiction over Burkhart. See Daimler AG v. Bauman, 134 S. Ct. 746, 751 (2014). Rather, plaintiffs argue that this Court has specific jurisdiction over Burkhart. Plaintiffs' argument fails, however, because the Complaint and opposition papers contain no plausible

allegations that would permit this Court to, consistent with the Due Process Clause, assert specific jurisdiction over Burkhart pursuant to New York's long-arm statute.

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis," where "[f]irst, we apply the forum state's long-arm statute," and then, "[i]f the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163-64 (2d Cir. 2010).

> New York's long-arm statute states, in relevant part, the following:
>
> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
>> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>>
>> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>>
>> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>>
>>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>>
>>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . .

N.Y. C.P.L.R. § 302(a)(1)-(3). Plaintiffs assert that personal jurisdiction is proper under three particular subsections of § 302: subsection (a)(1), subsection (a)(2), and subsection (a)(3)(ii).

"[B]ecause the plaintiffs' assertion of personal jurisdiction rests upon a state long-arm statute, the relevant constitutional constraints are those imposed by the Due Process Clause of the Fourteenth Amendment." Licci *ex rel.* Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 (2d Cir. 2012). "The constitutional analysis under the Due Process Clause consists of two separate components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." Id. The "minimum contacts" inquiry requires us to consider "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." Id. The "reasonableness" inquiry requires us to decide "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice – that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." Id. (internal quotation marks omitted).

If the minimum contacts are not sufficient, the due process inquiry ends. See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568-69 (2d Cir. 1996). If the minimum contacts are sufficient, then the court must turn to the second step of the due process inquiry to determine "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice" Licci, 673 F.3d at 60 (internal quotation marks omitted). The "reasonableness" analysis requires district courts to evaluate the following five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." Chloe, 616 F.3d at 164-65 (citing Asahi Metal Indus., Co., Ltd. v. Superior Court of Cal., 480 U.S. 102, 109 (1987)).

## A. Section 302(a)(1)

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state [or contracted to supply goods in the state]; and (2) the claim asserted must arise from that business activity." Licci, 732 F.3d at 168 (quoting Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006)). Here, Burkhart recognizes that some of its products ended up in New York through Kois, but argues that it did not actively transact business in New York, nor did Burkhart contract with Kois to supply goods in New York. Burkhart also argues that, even if Kois' sale of Burkhart supplies is considered a transaction of business attributable to Burkhart, plaintiffs' claims nonetheless do not arise from that business activity. Burkhart is right on all points.

First, although Burkhart fulfills orders from Kois members, it is not transacting business in New York. Transacting business under § 302(a)(1) requires "purposeful activity – some act by which the *defendant* purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (internal citations and quotation marks omitted) (emphasis added). Courts look at several factors in making this determination: "(i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether . . . the defendant has visited New York for the purpose of meeting with parties to the contract . . .; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [the defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22-23 (2d Cir. 2004) (internal quotation marks omitted). "Although all factors are relevant, no one factor is dispositive and other factors may be considered." Id. Essentially, "[c]ourts look to the totality of the

defendant's activities within the forum." Best Van Lines, 490 F.3d at 246 (internal quotation marks omitted).

The facts before me paint a clear picture that Burkhart does not transact business in New York.[1] Burkhart has never been registered with the New York Secretary of State to do business in New York. Burkhart has never had any offices, operations, or employees in New York. Nor has Burkhart ever owned any assets in New York or maintained a bank account in New York. Burkhart has never even conducted direct advertising or marketing activities in New York. In fact, prior to 2014, Burkhart had not made a single sale to a dentist located in New York. And since 2014, all sales were through Kois, a separate Washington-based GPO.

Any transaction of business by Kois in New York cannot be imputed to Burkhart. There is no seller-customer relationship between Burkhart and any New York dentists. Burkhart is not obligated to service any equipment bought by New York dentists. The terms of sale, including shipping, payment, returns, and pricing, are negotiated and agreed on between Burkhart and Kois, not between Burkhart and any New York dentist.

Even though I find that Burkhart does not transact business, the inquiry does not end because § 302(a)(1) contains a "contracts to supply goods" clause. The question then is whether all of the above-listed conduct supports a conclusion that Burkhart contracted with Kois to supply goods to New York in the sense captured by the long-arm statute. It does not. Section 302(a)(1) was amended to include "contracts to supply goods" in order to extend "long arm jurisdiction to non-domiciliaries who make contracts to be performed in New York and then fail to perform." A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 80 (2d Cir. 1993). That is not what we have here.

---

[1] I will note that both parties put in additional affidavits and exhibits, which I can and did consider on this motion. Plaintiffs never sought any additional jurisdictional discovery, nor have they asked me to delay ruling on this motion while they sought such discovery.

The Kois Contract does not mention New York. The Kois Contract mentions the state of Washington, which is specified in the choice-of-law and forum-selection clauses, but nowhere is New York specified in any regard. Because Burkhart has not made any contract to be explicitly performed in New York – much less failed to perform under such a contract as is the sort of conduct the "contracts" clause is meant to cover – Burkhart cannot be subject to jurisdiction under § 302(a)(1)'s "contracts to supply goods" clause. See Great N. Ins. Co. ex rel. Felix Schoeller Tech. Papers v. Constab Polymer–Chemie GmbH & Co., 75 F. App'x 824, 826 (2d Cir. 2003) (vacating district court order of dismissal because plaintiff had made out a *prima facie* case of jurisdiction under § 302(a)(1) where there was a contract providing specifically for the shipment of the allegedly defective product into New York); Boyce v. Cycle Spectrum, Inc., 148 F. Supp. 3d 256, 265 (E.D.N.Y. 2015) ("The contract must be to send goods specifically into New York.").

Even if I were to accept that Burkhart's limited sales through Kois constituted the transaction of business or a contract to supply goods under § 302(a)(1), I still have no basis for personal jurisdiction over Burkhart because plaintiffs' conspiracy allegations do not arise from those sales. In determining whether the second prong of § 302(a)(1) is met, courts must analyze whether a defendant's actions "bear a substantial relationship to the transaction out of which the instant cause of action arose[,]" *i.e.*, whether there is a "strong nexus" or a "direct relation" between plaintiff's claim and the defendant's New York conduct. Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983). Plaintiffs have not made that showing.

First, plaintiffs' claim cannot arise from Burkhart's sales to New York dentists because Burkhart did not make any sales to any named plaintiff in New York. See Selman v. Harvard Med. Sch., 494 F. Supp. 603, 613 n.6 (S.D.N.Y. 1980), aff'd, 636 F.2d 1204 ("the named class

10

representative himself must satisfy all jurisdictional prerequisites before the action can go forward"); Newberg on Class Actions § 6:25 (5th ed.) ("A putative class representative seeking to hale a defendant into court to answer to the class must have personal jurisdiction over that defendant just like any individual litigant must"). Second, even if plaintiffs could rely on Burkhart's New York sales to show personal jurisdiction, these sales lack any nexus to plaintiffs' antitrust claim. This action concerns defendants' alleged "agreement not to compete on price," the "aim" of which was "to ensure that dentists get dental products for the same price no matter who they buy it from." Any New York dentist that purchased through Kois did so at prices negotiated by Kois, not actively set by Burkhart pursuant to a collusive agreement.

Plaintiffs focus on the fact that § 302(a)(1) is a "single-act" statute, but do not appreciate that even this single act must be directed at New York. See Universal Grading Serv. v. eBay, Inc., No. 08-CV-3557 (CPS), 2009 WL 2029796, at *6 (E.D.N.Y. June 10, 2009) ("A single purposeful action *directed at New York* is sufficient . . ." (emphasis added)). There is no support in the record that Burkhart directed any act at New York to bring it within § 302(a)(1).

### B. Section 302(a)(2)

Plaintiffs have no basis to assert personal jurisdiction under this subsection either. "CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." Bensusan Rest. Corp. v. King, 126 F.3d 25, 28 (2d Cir. 1997). Therefore, "jurisdiction cannot be asserted over a nonresident" under § 302(a)(2) "unless the nonresident commits an act in this state," which requires "the defendant or his agent be physically present in New York." Id. "In short, the failure to perform a duty in New York is not a tortious act in this state, under the cases, unless the defendant or his agent enters the state." Id. As Burkhart never entered New York State, plaintiffs' only avenue under this subsection is to argue the acts of an agent. Plaintiffs have failed to make such a showing.

11

Plaintiffs claim that Ivoclar, acting as Burkhart's agent, convinced one of its distributors to cease supplying SourceOne with dental products as part of the market boycott, and that this activity constitutes a tortious act in New York subjecting Burkhart to jurisdiction under § 302(a)(2). Plaintiffs' argument fails. To impute Ivoclar's actions to Burkhart under § 302(a)(2), plaintiffs must demonstrate, *inter alia*, that Ivoclar acted "under some control by [Burkhart]." Grove Press, Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981). But there is no basis to argue that Burkhart had any control, or even any leverage, over Ivoclar. Deposition testimony shows that Henry Schien, Benco, and Patterson account for 93-99% of Ivoclar's business, whereas Burkhart is one of approximately 30 distributors that make up the remaining one to seven percent. It defies reason to argue that such a minor dealer, whose sales at times are less than one percent, exerts any control over a company like Ivoclar. See CutCo Indus. v. Naughton, 806 F.2d 361, 366 (2d Cir. 1986) (finding that agency under § 302 must focus on "the realities of the relationship in question").

Plaintiffs argue two other theories under § 302(a)(2), but both are meritless. First, plaintiffs argue that jurisdiction is appropriate under the concept of "conspiracy jurisdiction." This argument fails for a host of reasons. Although some district courts in this Circuit had adopted this concept of conspiracy jurisdiction, see Tarsavage v. Citic Trust Co., 3 F. Supp. 3d 137, 147 (S.D.N.Y. 2014); Maersk, Inc. v. Neewra, Inc., 554 F. Supp. 2d 424, 442-43 (S.D.N.Y. 2008); In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005), others have rejected it entirely, see Tymoshenko v. Firtash, 11-CV-2794 (KMW), 2013 WL 1234943, at *2-4 (S.D.N.Y. Mar. 27, 2013) (recognizing that conspiracy jurisdiction "has been widely criticized by courts and scholars" and declining to consider co-conspirators' contacts for the purpose of establishing personal jurisdiction over a foreign defendant); In re Aluminum

Warehousing Antitrust Litig., 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) ("Nor does the Court find that the assertion of participation in a conspiracy generally can provide a standalone basis for jurisdiction subject only to the constraints of due process.").

I also decline to adopt the application of conspiracy jurisdiction. In the first instance, there is no doctrinal support for "conspiracy jurisdiction." Either jurisdiction is "appropriate under existing jurisdictional principles[] or it is not," and "[a] due process inquiry is always required." In re Aluminum, 90 F. Supp. 3d at 232. Moreover, as will be discussed below, all of plaintiffs' theories of personal jurisdiction violate due process – and although I need not reach the issue because I reject conspiracy jurisdiction out of hand – it is highly unlikely that any concept of conspiracy jurisdiction survived the Supreme Court's ruling in Walden v. Fiore, 134 S. Ct. 1115 (2014). See In re N. Sea Brent Crude Oil Futures Litig., No. 13-MD-02475, 2017 WL 2535731, at *9 (S.D.N.Y. June 8, 2017) ("[T]here is reason to think that basing specific personal jurisdiction on the acts of a defendant's co-conspirators is questionable after Walden" because Walden "emphasized that personal jurisdiction must be based on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."). Put differently, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." Walden, 134 S. Ct. at 1123. Thus, it "stands to reason that a defendant has not established minimum contacts with a forum on the basis of his co-conspirator's conduct in the forum state alone." In re N. Sea Brent Crude Oil Futures Litig., 2017 WL 2535731, at *9.

Plaintiffs' second argument is that Burkhart sold cartelized products in New York, bringing Burkhart under § 302(a)(2), but there are simply no allegations supporting this theory,

as was discussed already in the previous section. Accordingly, I find § 302(a)(2) does not provide this Court with jurisdiction over Burkhart.

C.  Section 302(a)(3)(ii)

Section 302(a)(3)(ii) confers long-arm jurisdiction where a defendant (i) "commits a tortious act without the state causing injury to person or property within the state," (ii) "expects or should reasonably expect the act to have consequences in the state," and (iii) the cause of action "aris[es] from" that act. N.Y. C.P.L.R. § 302(a)(3)(ii). The test of whether a defendant expects or should reasonably expect its actions to have consequences in New York is an objective one. See Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 241 (2d Cir. 1999). Mere "likelihood or foreseeability" that a "product will find its way into New York" is insufficient. Id. Rather, "foreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market." Id. (internal quotation marks omitted).

Plaintiffs' Complaint and opposition papers are devoid of any allegations that Burkhart knew or should have known that its alleged participation in the conspiracy would have effects in New York, or that Burkhart made any efforts to directly or indirectly serve the New York market. These omissions by themselves preclude personal jurisdiction under § 302(a)(3)(ii). See, e.g., Megna v. Biocomp Labs. Inc., 166 F. Supp. 3d 493, 500 (S.D.N.Y. 2016). Moreover, even if Burkhart engaged in an alleged conspiracy with Henry Schein, as alleged via the 2008 conversation, there is no evidence showing that Burkhart reasonably expected consequences in New York because it has not made any effort to serve the New York market. See Bissonnette v. Podlaski, 138 F. Supp. 3d 616, 627 (S.D.N.Y. 2015) ("Plaintiff alleges no facts to demonstrate that Defendants aimed any of their business or legal activities at consumers in New York or

otherwise purposefully availed themselves of the privilege of this state's laws, such that they should have expected to be haled into court within the state.").

Moreover, at the time that Burkhart's sales representative allegedly conspired with Henry Schein in 2008, Burkhart had not made a single sale to any New York dentists, even though Burkhart had been in business for well over 100 years. It was not until six years after the alleged conspiratorial conversation that Burkhart made any sale to a New York dentist, and again, that was only through Kois. I state this not to draw a large gap of time between a conspiratorial event and the 2014 sales, as the inquiry is not temporally-based; rather, it is to highlight that at the time of the only allegation of overt collusion by Burkhart, Burkhart was not even serving, or even attempting to serve, the New York market such that it could not possibly foresee New York consequences. And even if it were foreseeable that Burkhart's relationship with Kois could lead to New York sales, as stated above, mere foreseeability is insufficient. See Kernan, 175 F.3d at 241; Boyce, 148 F. Supp. 3d at 266 ("[O]ccasional sales into New York, or awareness of a possibility that a product will find its way into New York, is not sufficient to satisfy [§ 302(a)(3)(ii)]." (internal quotation marks omitted)).

### D. Due Process

Having found that there is no statutory basis for personal jurisdiction under New York's long-arm statute, the Court need not consider the next step of analyzing whether jurisdiction comports with due process. But assuming *arguendo* that plaintiffs' minimal showing is sufficient under New York law, the Court still cannot assert personal jurisdiction over Burkhart because it would violate due process. Cf. Best Van Lines, 490 F.3d at 248 ("Some distance remains between the jurisdiction permitted by the Due Process Clause and that granted by New York's long-arm statute.").

The due process analysis "focuses on the relationship among the defendant, the forum, and the litigation." Walden, 134 S. Ct. at 1121 (internal citations and quotation marks omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Id. Specific jurisdiction "'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and therefore subject to the State's regulation.'" Waldman v. Palestine Liberation Org., 835 F.3d 317, 331 (2d Cir. 2016) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)); see also id. (The exercise of specific jurisdiction thus "depends on in-state activity that gave rise to the episode-in-suit." (internal quotation marks omitted)).

Jurisdiction "must arise out of contacts that the defendant *himself* creates with the forum." Walden, 134 S. Ct. at 1122 (internal quotation marks omitted). As applied here, this means that Burkhart's, not Kois', "suit-related conduct must create a substantial connection" with New York. Id. at 1121. Importantly, that "suit-related conduct" must also tie Burkhart itself to New York itself, not just to a plaintiff that happens to reside in New York. Id. at 1121-22. In making this determination, the court is directed to inquire "whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Goodyear, 564 U.S. at 924. And as the Supreme Court recently emphasized in further tightening the reins on this analysis, specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Bristol-Myers, 137 S. Ct. at 1780. Specific jurisdiction requires a "connection between the forum and the specific claims" presented in the lawsuit. Id. at 1781.

16

The Supreme Court's decision in Bristol-Myers is very instructive on the issues at bar. There, the Court held that there "must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" 137 S. Ct. at 1781 (quoting Goodyear, 564 U.S. at 919). When "there is no such connection, specific jurisdiction is lacking *regardless of the extent of a defendant's unconnected activities in the State*." Id. (emphasis added). "The activities of plaintiffs or third parties alone will not confer jurisdiction, and the court's analysis is directed to the defendant's contacts with the forum itself and 'not the defendant's contacts with persons who reside there.'" Sullivan v. Barclays PLC, No. 13-CV-2811, 2017 WL 685570, at *43 (S.D.N.Y. Feb. 21, 2017) (quoting Walden, 134 S. Ct. at 1122).

As discussed above, Burkhart's limited sales to New York dentists lack a nexus to this action such that I cannot find that Burkhart's "suit-related conduct [created] a substantial connection with the forum State" to satisfy due process. Walden, 134 S. Ct. at 1121; see also Goodyear, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). Burkhart maintains no presence in New York and never has had one. The New York dentists to whom Burkhart has sold are all Kois members with whom Burkhart has no contractual relationship. Burkhart's supply of some goods into New York was the result of an agreement executed in Washington with a mandatory Washington forum selection clause that would bind any Kois members seeking to sue Burkhart. Subjecting Burkhart to jurisdiction in New York on the basis of these facts would violate due process. Nothing about the facts of Burkhart's conduct shows a purposeful availment of New York's privileges to the extent that would permit a New York court to assert specific jurisdiction over Burkhart consistent with due process.

17

Nor is it appropriate, as plaintiff tries to argue, to find that contracting to sell goods to the members of a nationwide GPO is sufficient in and of itself to hale Burkhart into a New York court. On this point, Bristol-Myers is again instructive. There, in what the Court termed "a last ditch contention," the respondents argued that Bristol-Meyers' "decision to contract with a California company [McKesson] to distribute [Plavix] nationally provides a sufficient basis for personal jurisdiction." 137 S. Ct. at 1783 (internal quotation marks omitted). The Court decisively rejected such an argument, holding that "[t]he requirements of International Shoe . . . must be met as to each defendant over whom a state court exercises jurisdiction." Id. (internal quotation marks omitted).

Plaintiffs attempt to side-step the due process holdings in Bristol-Myers by arguing that the case has no effect on the law in class actions because the case before the Supreme Court was not a class action. This argument is flawed. The constitutional requirements of due process does not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case. See, e.g., King Cty. v. IKB Deutsche Industriebank AG, 769 F. Supp. 2d 309, 315 (S.D.N.Y. 2011) (dismissing class action complaint against individual defendants for lack of personal jurisdiction because defendants' conduct lacked an articulable nexus to the plaintiffs' claims).

Due process to assert personal jurisdiction requires that there be a direct "connection between the forum and the specific claims," Bristol-Myers, 137 S. Ct. at 1780, and here, plaintiffs' submissions fail to make that connection.

## CONCLUSION

Burkhart's motion to dismiss [134] is granted. The Clerk of Court is directed to terminate Burkhart from this action.

**SO ORDERED.**

                                                                                                           U.S.D.J.

Dated: Brooklyn, New York
        September 20, 2017