**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re DENTAL SUPPLIES ANTITRUST LITIGATION | No. 1:16-CV-00696-BMC-GRB<br><br>ALL CASES |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, FOR CERTIFICATION**
**OF CLASS FOR SETTLEMENT PURPOSES, FOR APPOINTMENT OF CLASS**
**COUNSEL, AND TO ISSUE APPROPRIATE NOTICE TO THE CLASS**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................. 1

II.  PROCEDURAL BACKGROUND................................................................................ 2

III.  THERE IS MORE THAN "PROBABLE CAUSE" TO BELIEVE THAT FINAL
     APPROVAL OF THE SETTLEMENT WILL ULTIMATELY BE GRANTED............. 8

   A.  The Settlement is Presumptively Fair because it Resulted from Arm's Length
       Negotiations by Experienced and Informed Counsel ......................................... 9

   B.  The *Grinnell* Factors Weigh in Favor of Granting Preliminary Approval ...................... 10

      1.  The Complexity, Expense, and Likely Duration of the Litigation. ........................... 11

      2.  The Settling Parties are Well-Informed about the Strengths and Weaknesses of their
          Claims at this Advanced Stage. ................................................................. 13

      3.  The Settlement Amount is Fair, Reasonable, and Adequate in Light of the Risks of
          Further Litigation. ............................................................................ 14

      4.  The Defendants' Ability to Withstand a Greater Judgment Does Not Weigh Against
          Settlement. ..................................................................................... 16

      5.  The Settlement is Reasonable in Light of the Possible Recovery and the Attendant
          Risks of Litigation............................................................................. 17

IV.  CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ..................... 19

   A.  The Settlement Class Meets the Requirements of Rule 23(a) ......................................... 20

      1.  The Number of Class Members Is So Numerous That Joinder Is Impracticable. ...... 20

      2.  There Are Questions of Law and Fact Common to All Class Members. ................... 21

      3.  Plaintiffs' Claims Are Typical of Those of the Settlement Class.............................. 22

      4.  The Settlement Class Is Adequately and Fairly Represented. .................................. 23

   B.  The Settlement Class Meets the Requirements of Rule 23(b)(3) ................................... 24

      1.  Common Questions of Law and Fact Predominate. ................................................... 24

      2.  A Class Action is the Superior Method for Resolving this Case.............................. 27

     C.   Interim Co-Lead Counsel Should be Appointed Co-Lead Settlement Class Counsel...... 28

V.       BOTH THE NOTICE PLAN AND PLAN OF ALLOCATION ARE REASONABLE . 29

     A.  The Notice Plan.................................................................................................................. 29

     B.  The Plan of Allocation ...................................................................................................... 31

VI.    PROPOSED SCHEDULE FOR SERVICE OF NOTICE, MOTIONS FOR FEES AND
        SERVICE AWARDS, CLASS EXCLUSIONS, OBJECTIONS, AND FAIRNESS
        HEARING.................................................................................................................... 33

VII.   CONCLUSION............................................................................................................ 34

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .......................................................................................... 19, 20, 24, 25

*Authors Guild v. Google, Inc.*,
    No. 05-CV-8136 (DC), 2009 WL 4434586 (S.D.N.Y. Dec. 1, 2009) ..................................... 10

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    No. 07-CV-2207-JGK, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ..................................... 15

*Berkson v. Gogo LLC*,
    147 F. Supp. 3d 123 (E.D.N.Y. 2015) ...................................................................................... 8

*Bourlas v. Davis Law Assocs.*,
    237 F.R.D. 345 (E.D.N.Y. 2006) .................................................................................... 27, 28

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
    No. 85-CV-3048-JMW, 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ....................................... 16

*Charron v. Pinnacle Grp. N.Y. LLC*,
    874 F. Supp. 2d 1791 (S.D.N.Y. 2012) .................................................................................. 17

*Cohen v. J.P. Morgan Chase & Co.*,
    262 F.R.D. 153 (E.D.N.Y. 2009) .................................................................................... 19, 24

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) .................................................................................................................. 15

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ..................................................................................................... 20

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ..................................................................................................... 26

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................................10-11, 14-15, 18

*Dial Corp. v. News Corp.*,
    317 F.R.D. 426 (S.D.N.Y. 2016) ........................................................................................... 11

*Dover v. British Airways, PLC (UK)*,
    323 F. Supp. 3d 338 (E.D.N.Y. 2018) ............................................................................... 8, 10

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015) ................................................................. 13

*Hall v. ProSource Techs., LLC*,
    No. 14-CV-2502-SIL, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ...................................... 30

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
    818 F.2d 145 (2d Cir. 1987) ........................................................................... 31

*In re Air Cargo Shipping Services Antitrust Litig.*,
    No. 06-MD-1775 (JG) (VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ....... 21, 22, 23, 26

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1775-JG-VVP, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ...................... 13, 31

*In re Am. Int'l Grp, Inc. Sec. Litig*,
    689 F.3d 229 (2d Cir. 2012) .............................................................. 19, 24, 25, 26-27

*In re AOL Time Warner, Inc. Securities and "ERISA" Litig.*,
    No. 02-CV-5575-SWK, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................ 13, 18

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................ 17

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) ......................................................... 13-14, 31

*In re Currency Conversion Fee Antitrust Litig.*,
    224 F.R.D. 555 (S.D.N.Y. 2004) ........................................................................ 22

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) ......................................................................... 9

*In re Dental Supplies Antitrust Litig.*,
    No. 16-CV-696-BMC-GRB, 2016 WL 5415681 (E.D.N.Y. Sept. 28, 2016) ........................... 4

*In re Dental Supplies Antitrust Litig.*,
    No. 16-CV-696-BMC-GRB, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ........................... 5

*In re Global Crossing Securities and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y.2004) .................................................................. 13, 29, 31

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................. 13, 17, 18, 29

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) ................................................................ 19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................ 26

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ........................................... 11-12, 16, 17-18

*In re Packaged Ice Antitrust Litig.*,
322 F.R.D. 276 (E.D. Mich. 2017) .............................................................. 19

*In re PaineWebber Ltd. Partnerships Litig.*,
171 F.R.D. 104 (S.D.N.Y.) ..................................................................... 9, 33

*In re Playmobil Antitrust Litig.*,
35 F. Supp. 2d 231 (E.D.N.Y. 1998) .......................................................... 26

*In re Processed Egg Prod. Antitrust Litig.*,
No. 08-MD-2002, 2016 WL 3584632 (E.D. Pa. June 30, 2016) ................... 27

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
164 F.R.D. 362 (S.D.N.Y.1996) ................................................................ 31

*In re Top Tankers, Inc. Sec. Litig.*,
No. 06-CV-13761-CM, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ......... 14-15

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013) ....................................................................... 25

*In re Urethane Antitrust Litig.*,
768 F.3d 1245 (10th Cir. 2014) .................................................................. 26

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) ....................................................................... 26

*In re Vitamin C Antitrust Litig.*,
279 F.R.D. 90 (E.D.N.Y. 2012). ......................................................... *passim*

*In re Vitamin C Antitrust Litig.*,
No. 06-MD-1738-BMC, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ....... 11, 31

*Johnson v. Nextel Commc'ns Inc.*,
780 F.3d 128 (2d Cir. 2015) ................................................................. 21, 25

*Labbate-D'Alauro v. GC Servs. Ltd. P'ship*,
    168 F.R.D. 451 (E.D.N.Y. 1996) ........................................................... 22

*Larsen v. JBC Legal Grp., P.C.*,
    235 F.R.D. 191 (E.D.N.Y. 2006) ........................................................... 24

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015)........................................... 9, 17, 31, 33

*Parker v. City of New York*,
    No. 15-CV-6733 (CLP), 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017) ......................... 8, 9, 10

*Reid v. SuperShuttle Int'l, Inc.*,
    No. 08-CV-4854-JG-VVP, 2012 WL 3288816 (E.D.N.Y. Aug. 10, 2012) ........................... 22

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)............................................................... 25

*Sanders v. CJS Sols. Grp., LLC*,
    No. 17-CIV-3809 (ER), 2018 WL 1116017 (S.D.N.Y. Feb. 28, 2018).................................. 10

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................ 29

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ................................................................. 24-25

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001)............................................................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................... 11, 17, 30

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)............................................................... 29

*Weseley v. Spear, Leeds & Kellogg*,
    711 F. Supp. 713 (E.D.N.Y. 1989) ........................................................ 12

## **Rules**

Fed. R. Civ. P. 12 ............................................................................ 5

Fed. R. Civ. P. 23 ....................................................................... *passim*

## I.  __INTRODUCTION__

After nearly three years of hard-fought litigation, Interim Co-Lead Counsel ("Class

Counsel"), on behalf Plaintiffs Arnell Prato, D.D.S., P.L.L.C, d/b/a/ Down to Earth Dental,

Evolution Dental Sciences, LLC, Howard M. May, DDS, P.C., Casey Nelson, D.D.S., Jim Peck,

D.D.S., Bernard W. Kurek, D.M.D., Larchmont Dental Associates, P.C., and Keith Schwartz,

D.M.D., P.A. (together, "Plaintiffs"), on the one hand, and Defendants Henry Schein, Inc.,

Patterson Companies, Inc., and Benco Dental Supply Company (together, "Defendants"), on the

other (together with Plaintiffs, "the Parties"), have entered into a proposed Settlement Agreement

(the "Settlement" or "Agreement"), dated September 28, 2018.[1]  The Settlement, if finally

approved, would resolve all claims brought by Plaintiffs and a proposed class of direct

purchasers of Dental Supplies and dental equipment[2] (the "Settlement Class" or "Class")

(defined below). Under the Settlement, Defendants have collectively agreed to pay $80 million

in settlement funds (the "Settlement Amount") in exchange for dismissal of the litigation with

prejudice and release of certain claims by Plaintiffs and the Class.[3]  Defendants have denied and

continue to deny all of Plaintiffs' claims and allegations of wrongdoing, and have agreed to the

Settlement to avoid the further expense, inconvenience, and distraction of burdensome and

protracted litigation.

---

[1] The Agreement is attached as Exhibit A to the Declaration of Eric L. Cramer, Esq. in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement, for Certification of a Class for Settlement Purposes, for Appointment of Class Counsel, and to Issue Appropriate Notice to the Class ("Cramer Decl.").

[2] Dental Supplies and dental equipment are collectively referred to herein, and in the Settlement, as "Dental Products." *See* Settlement at Sec. II ¶ 10. Dental Supplies are defined as consumable Dental Products used by dentists and dental laboratories, sometimes referred to as sundries or merchandise, and include items such as gloves, hand instruments, face masks, toothbrushes, anesthetic solutions, and the like. *Id.* at ¶ 11. Dental equipment are non-consumable Dental Products used by dentists and dental laboratories that include imaging devices, dental chairs, and CAD/CAM systems. *See* Second Consolidated Class Action Complaint ("SCCAC"), ECF No. 114, at ¶ 36.

[3] The Parties' respective releases are summarized in the Agreement and in the proposed long-form Notice described below. *See* Settlement at Sec. II ¶¶ 25-26; *infra* at Section V.A.

1

For the reasons stated below, the proposed Class should be certified for settlement purposes, the "interim" designation should be removed from Co-Lead Class Counsel, and the proposed Settlement should be preliminarily approved by the Court. Plaintiffs seek the Court's entry of an order providing for preliminary approval, which will set in motion a process for the Court to assess final approval of the Settlement, after provision of (i) notice to the Settlement Class, (ii) an opportunity for each Settlement Class member to exclude itself from, object to, or otherwise be heard regarding the Settlement, and (iii) a subsequent hearing on final approval (the "Fairness Hearing"). Plaintiffs also seek the Court's approval of the manner and form of the proposed Long Form and Summary Notices (collectively, the "Notices"), appointment of Huntington National Bank as Escrow Agent, and appointment of Heffler Claims Group as Settlement Administrator. Finally, Plaintiffs seek the establishment of a briefing schedule for (1) final settlement approval and a proposed plan of distribution, and (2) Class Counsel's application for attorneys' fees, expenses, and Class Representative service awards. Defendants do not oppose the motion or the proposed preliminary approval order, but do not consent to any of the factual or legal representations made in the motion or in the supporting papers.[4]

## II.     PROCEDURAL BACKGROUND

The Parties have reached an agreement to resolve this long-running and contentious litigation that provides eighty million dollars in immediate monetary relief to U.S. dental practices and dental laboratories for their alleged payment of supracompetitive prices for Dental Products as a result of Defendants' alleged violations of the antitrust laws, which all Defendants deny.

---

[4] Defendants deny and continue to deny that certification of any proposed class for non-settlement litigation purposes is appropriate pursuant to Rule 23.

The first of more than 30 class complaints was filed in January 2016. Later that year, on February 12, 2016, the Court consolidated all class cases, and designated *SourceOne Dental, Inc. v. Patterson Companies, Inc., et al*., No. 15-cv-5440, as a related case. *See* ECF No. 2. In the same order, the Court appointed the four Class Counsel firms (Berger Montague PC, Cohen Milstein Sellers & Toll PLLC, Hausfeld LLP, and Susman Godfrey LLP) as Interim Co-Lead Class Counsel for the proposed Class. *Id*.

Plaintiffs filed their first Consolidated Class Action Complaint ("CCAC") on February 26, 2016, consolidating all related class cases and designating Plaintiffs as representatives for the proposed Class. ECF No. 30. Plaintiffs allege that since at least August 31, 2008, Defendants and co-conspirator Burkhart Dental Supply Co. ("Burkhart") had engaged in a long-running conspiracy in the market for the distribution of Dental Supplies and equipment to fix prices, artificially enhance margins, and suppress competition in violation of the antitrust laws (the "Conspiracy"). The Conspiracy encompassed an alleged overarching agreement to suppress price competition, by coordinating, among other ways: (a) directly, through interfirm communications, and indirectly, through dental manufacturers and a third-party data collection company, to impose artificially inflated gross margin levels and monitor and enforce those levels; (b) directly and indirectly to prevent and restrain competition by boycotting, refusing to deal with, and jointly pressuring manufacturers not to deal with entities that threatened margin erosion such as group purchasing organizations, Amazon.com, and low-cost distributors; and (c) directly to restrict the movement of customers from one Defendant to another by limiting the hiring of each other's sales representatives and restricting new hires from soliciting prior clients. *See* SCCAC at ¶¶ 45-48, 75-77, 87; Cramer Decl. at ¶ 9.

3

Two months after Plaintiffs filed the CCAC, on May 4, 2016, Defendants filed a joint motion to dismiss the CCAC. ECF No. 62. After extensive briefing, on September 28, 2016, the Court denied Defendants' motion in its entirety. *In re Dental Supplies Antitrust Litig.*, 16-CV-696-BMC-GRB, 2016 WL 5415681, at *1 (E.D.N.Y. Sept. 28, 2016).

Following the Court's order denying Defendants' motion to dismiss, Plaintiffs requested leave to file a Second Consolidated Class Action Complaint ("SCCAC") to add an alleged co-conspirator, Burkhart, as a named defendant. ECF No. 114. The Court granted leave, and Plaintiffs filed the SCCAC on October 22, 2016. ECF No. 116. Plaintiffs in the SCCAC asserted claims on behalf of a proposed Class defined as:

> All persons or entities that purchased dental supplies and equipment from Henry Schein, Patterson, Benco, Burkhart or any combination thereof, during the period beginning August 31, 2008, until such time as the anticompetitive conduct alleged herein has ceased (the "Class Period"). Excluded from the Class are Defendants, their subsidiaries, affiliate entities, and employees, and all federal or state government entities or agencies.

*See* SCCAC at 8. The proposed Class defined in the SCCAC is substantially similar to the Settlement Class proposed in the Settlement, which is defined as:

> All persons or entities that purchased Dental Products directly from Schein, Patterson, Benco, Burkhart, or any combination thereof, during the period beginning August 31, 2008 through and including March 31, 2016 (the "Class Period"). Excluded from the Class are Schein, Patterson, Benco, and Burkhart (including their subsidiaries, affiliate entities, and employees), and all federal or state government entities or agencies.

*See* Settlement at Sec. III ¶ 1.[5]

---

[5] The Settlement defines "Dental Products" to include both Dental Supplies and dental equipment, so the products covered in the two proposed Class definitions are also identical. *See* Settlement at Sec. III ¶ 1, *id.* at Sec. II ¶ 10; SCCAC at 8. Therefore, the only substantive difference between the Class definition in the Complaint and the definition being sought here is that the SCCAC did not propose a specific end-date, but the Settlement does. The Settlement proposes to fix the close of the Class Period at March 31, 2016 because (a) the discovery record, including importantly, the transactional data produced by Defendants and Burkhart in the case, ended at the date, and (b) as a practical matter, an end-period needs to be chosen to avoid releasing claims of future claimants.

Burkhart filed a motion to be dismissed from the action on January 13, 2017, ECF No. 134, followed by another round of briefing on their motion. In an order dated September 20, 2017, the Court determined that it lacked personal jurisdiction over Burkhart, and dismissed Burkhart from the action pursuant to Fed. R. Civ. P. 12(b)(2). *In re Dental Supplies Antitrust Litig.*, No. 16-CV-696-BMC-GRB, 2017 WL 4217115, at *1 (E.D.N.Y. Sept. 20, 2017). Plaintiffs subsequently settled their case against Burkhart in October 2017 on a non-class basis in exchange for Burkhart's agreement to provide cooperation with Class Counsel in Plaintiffs' case against the Defendants.

The discovery process was extensive and hotly contested. Plaintiffs filed several motions to compel the production of documents, both from Defendants and from third parties. Defendants produced more than 600,000 documents, and third parties produced hundreds of thousands of additional documents. Cramer Decl. ¶ 10. Defendants deposed all seven of the named Plaintiffs in the case, and Plaintiffs conducted nearly 100 depositions of Defendant and third-party witnesses. *Id.* Fact discovery spanned eighteen months, beginning on February 9, 2016, just before Plaintiffs filed the CCAC, and continuing until August 10, 2017. *See* ECF No. 209.

Discovery issues related to Defendants' productions of transactional data were particularly complex. Plaintiffs served their document and data requests on May 5, 2016, and, after extensive meet and confer discussions regarding various document discovery issues, Defendants made numerous productions of documents and data. Cramer Decl. at ¶ 11.

After Defendants completed their respective data productions, the combined database ultimately included more than 900 million transactional records, amounting to more than 1 terabyte of data—which was extremely large and unwieldy. *See* Declaration of James T. McClave in Support of Plaintiffs' Motion for Extension of Time to Complete Discovery, ECF

No. 224-2, at ¶ 5. This created challenges for Plaintiffs' experts in working with the data and in timely devising classwide impact and damages analyses. *See* Supplemental Declaration of James T. McClave in Support of Plaintiffs' Motion for Extension of Time to Complete Discovery, ECF No. 225, at ¶ 2. Eventually, Plaintiffs served four expert reports from their two expert witnesses (Dr. James McClave (an econometrician) and Prof. John Solow (an economist)). Defendants served expert reports from four separate experts. Plaintiffs deposed all four of Defendants' experts and defended depositions of Plaintiffs' experts. Cramer Decl. ¶ 13. Expert discovery concluded on February 22, 2018. ECF No. 246.

Throughout the course of the litigation, Co-Lead Counsel coordinated with counsel in a variety of related actions, including (i) attorneys for plaintiffs in the related *SourceOne* action; (ii) counsel for Archer and White Sales, Inc. ("Archer & White") (a low-cost distributor alleging that Defendants' anticompetitive conduct impaired its ability to compete in the action *Archer and White Sales, Inc. v. Henry Schein, Inc., et al.*, No. 12-cv-00572-JRG (E.D. Tex.)); and (iii) the Federal Trade Commission ("FTC") in its investigation of Defendants' allegedly anticompetitive conduct, and subsequent administrative action. *See* Cramer Decl. ¶ 15.

The discovery record in this case was immense. Because this matter was consolidated for discovery with the *SourceOne* action, Co-Lead Counsel obtained all discovery materials that were produced in the *SourceOne* action as well as substantial additional materials requested by Plaintiffs that were specific to this Action. *Id*. Co-Lead Counsel coordinated with SourceOne's counsel throughout the discovery process to avoid duplicative document requests and depositions. *Id*. Co-Lead Counsel similarly coordinated on discovery issues with counsel for Archer & White, and Plaintiffs obtained numerous discovery materials from Archer & White. *Id*. Co-Lead Counsel also consulted with the FTC regarding discovery in the FTC's related

investigation into Defendants' conduct, including regarding issues relating to Defendants' document and data productions. *Id*. The FTC action, in which trial before an administrative law judge began on October 16, 2018, alleges some of the same conduct alleged by Plaintiffs here. *Id*.

On February 23, 2018, after extensive mediation briefing, the Parties attended a mediation before the Honorable Diane Welsh, a highly respected mediator and former United States Magistrate Judge for the Eastern District of Pennsylvania. *See id.* at ¶ 17. No agreement was reached at the mediation, but the Parties continued their settlement discussions in the following months. *Id.*

After the close of fact and expert discovery, Plaintiffs filed their Motion for Class Certification on February 22, 2018. ECF No. 263. Defendants filed memoranda in opposition to the Motion for Class Certification as well as *Daubert* motions to exclude the opinions of Plaintiffs' expert witnesses, Dr. James T. McClave and Dr. John Solow, from consideration at class certification. ECF Nos. 272, 274. Defendants contended, among other things, that: (1) the evidence does not support Plaintiffs' allegations that Defendants conspired to restrain trade, and that, in any event, the conduct was diffuse and could not be adjudicated on a classwide basis; (2) Plaintiffs cannot demonstrate common impact and classwide damages because prices and margins for dental supplies were allegedly highly variable; (3) individualized inquiries are required to determine whether each Class member was overcharged; and (4) Dr. McClave's models used invalid benchmarks and had certain other statistical flaws, rendering them unreliable for purposes of demonstrating common impact and classwide damages. *See* Cramer Decl. ¶ 14. Although Plaintiffs believed they were likely to overcome these challenges, Defendants' motions raised substantial risks to the viability of Plaintiffs' claims and their ability

to proceed as a litigation class. Briefing on the Motion for Class Certification and *Daubert* motions concluded on June 28, 2018. ECF Nos. 293-94.

On August 16, 2018, on the day of the scheduled hearing on Defendants' motion to exclude the opinions of Dr. McClave, the Parties reached an agreement in concept for a classwide settlement. *See* Cramer Decl. ¶ 18. The Parties negotiated the specific terms of the Settlement over the next six weeks before executing the Agreement on September 28, 2018. *Id.* ¶ 19. Plaintiffs informed the Court in writing of the Settlement on the same day. *See* ECF No. 305.

## III.   THERE IS MORE THAN "PROBABLE CAUSE" TO BELIEVE THAT FINAL APPROVAL OF THE SETTLEMENT WILL ULTIMATELY BE GRANTED

Preliminary approval is the first of a two-step process leading to final approval of a class action settlement. *Parker v. City of New York*, No. 15-CV-6733 (CLP), 2017 WL 6375736, at *4 (E.D.N.Y. Dec. 11, 2017). The second step is a fairness hearing to confirm whether the proposed settlement is fair, reasonable and adequate pursuant to Rule 23(e). *See id.*; *Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 130–31 (E.D.N.Y. 2015).

"[T]o grant preliminary approval, the court need only determine that there is what might be termed 'probable cause' to submit the [proposed settlement] to class members and hold a full-scale hearing as to its fairness." *Dover v. British Airways, PLC (UK)*, 323 F. Supp. 3d 338, 349 (E.D.N.Y. 2018) (citation and quotations omitted); *Parker*, 2017 WL 6375736 at *4. Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval." *Dover*, 323 F. Supp. 3d at 349 (citation omitted). This step is a "preliminary" review of the fairness of the settlement. *See Berkson*, 147 F. Supp. 3d at 130. This threshold has easily been met.

A.     **The Settlement is Presumptively Fair because it Resulted from Arm's Length Negotiations by Experienced and Informed Counsel**

The Settlement was arm's length and hard-fought by experienced counsel after completion of fact and expert discovery over the course of three years of litigation, and thus is presumed fair. When considering approval of a class action settlement, the Court must "determine if the settlement was achieved through arm's length negotiations by counsel with the experience and ability to effectively represent the class's interests." *Parker*, 2017 WL 6375736, at *5 (citation and quotation marks omitted). A proposed settlement resulting from arm's length negotiations between experienced, capable counsel is entitled to a presumption of fairness. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) ("Where a settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the negotiation enjoys a presumption of fairness.") (citation omitted). Moreover, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.).

Both of these aspects are present here. First, Class Counsel are among the most highly experienced firms in the country in litigating complex antitrust class actions. All four firms are widely recognized as among the country's top antitrust litigation firms, each having led multiple complex cases to successful conclusions, including some of the most successful antitrust cases of all time. The opinions of these experienced and informed counsel supporting settlement are entitled to considerable weight. *See, e.g.*, *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 662 (S.D.N.Y. 2015) (finding settlement procedurally fair where due to experienced counsel and extensive discovery, "counsel on both sides were well-situated to thoughtfully assess the potential outcomes of the case and the likelihoods of each occurring"). The Parties' engagement

of an independent mediator for at least part of the process further ensures that negotiations were non-collusive and conducted at arm's length. *See Sanders v. CJS Sols. Grp., LLC*, No. 17-CIV-3809 (ER), 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated for at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement.").

Second, the Settlement demonstrates all the hallmarks of an arm's length agreement. Class Counsel had extensive knowledge of the case record and the Dental Products industry, resulting from years of hard-fought litigation. Cramer Decl. ¶ 20. The Parties' settlement negotiations were contentious and took place periodically over the course of many months. *Id.* at ¶¶ 16-19. Even after the Parties preliminarily agreed on the dollar amount of the Settlement, they continued to negotiate the specifics of the Settlement for an additional six weeks. *Id.* at ¶ 19. Plaintiffs' counsel's negotiations were informed by the assistance of their expert econometrician, Dr. McClave, and his consulting firm, Info Tech, Inc. *Id.* at ¶ 21.

In short, the Settlement was the product of extensive and hard-fought litigation occurring alongside equally hard-fought negotiations. Accordingly, this factor weighs in favor of Court approval of the proposed Settlement.

### B.    The *Grinnell* Factors Weigh in Favor of Granting Preliminary Approval

While it is unnecessary to undertake "a full fairness analysis" at the preliminary approval stage, *Authors Guild v. Google, Inc.*, No. 05-CV-8136 (DC), 2009 WL 4434586 (S.D.N.Y. Dec. 1, 2009), at * l, "the factors that will be relevant to final approval can be instructive in considering a motion for preliminary approval." *Dover*, 323 F. Supp. 3d at 350; *Parker*, 2017 WL 6375736, at *5. These factors, commonly referred to as the "*Grinnell* factors," are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

> discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) (citations omitted). "[N]ot every factor must weigh in favor of the settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 431 (S.D.N.Y. 2016). These factors are analyzed in the following sections, with the exception of the second factor—examining the reaction of the class—which cannot be considered on preliminary approval because notice has not yet been disseminated to the Settlement Class.

For the reasons set forth below, each of the applicable *Grinnell* factors supports preliminary approval. A preliminary review of those factors demonstrates not only that the Settlement falls within the range of reasonableness, but also that the Court is likely to grant final approval. The Court should therefore grant preliminary approval of the Settlement and authorize notice to the proposed Settlement Class.

## 1.    The Complexity, Expense, and Likely Duration of the Litigation.

The likelihood that further litigation of this case would be protracted and risky supports preliminary approval of the settlement. *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738-BMC, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). Numerous courts have recognized that "'[f]ederal antitrust cases are complicated, lengthy, . . . bitterly fought,' as well as costly." *Id.* at *4; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (same); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187

F.R.D. 465, 477 (S.D.N.Y. 1998) (noting that antitrust cases are "generally complex, expensive and lengthy" and that antitrust class actions in particular "have a well-deserved reputation as being most complex"); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (antitrust class actions "are notoriously complex, protracted, and bitterly fought"). Having overseen both this Action and the related *SourceOne* action over the past three years, this Court is fully aware of the complexities of this case.

      Every stage of this litigation has been fiercely contested. As described above, discovery spanned more than two years, including the productions of hundreds of thousands of documents and data comprising hundreds of millions of transactions, more than 100 depositions, and hundreds of pages of expert reports from six separate expert witnesses. Fact and expert discovery were very expensive given the enormous volume of documents and data that Plaintiffs and their experts reviewed and analyzed. Motions to dismiss, discovery motions, motions for class certification, and *Daubert* motions have been briefed and, in some instances, argued. Plaintiffs' Motion for Class Certification and Defendants' *Daubert* motions were pending before the Court at the time the Settlement was reached. Given the complexity of the factual and legal issues here, the number of defendants, the conflicting expert testimony, the extraordinarily voluminous discovery record, and the stakes at issue, the trial could have lasted many weeks. Post-trial motions followed by appeals would have been all but inevitable, delaying resolution by many more years. In short, because this Action is extremely complex, has required substantial time and expenses to litigate thus far, and would require far more time and expenses to litigate through a trial and post-trial appeals, the first *Grinnell* factor weighs in favor of granting preliminary approval.

### 2. The Settling Parties are Well-Informed about the Strengths and Weaknesses of their Claims at this Advanced Stage.

The Parties had completed fact and expert discovery, and thus the claims were well advanced at the time of this Settlement. "The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Securities and "ERISA" Litig.*, No. 02-CV-5575-SWK, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775-JG-VVP, 2009 WL 3077396, at *8 (E.D.N.Y. Sept. 25, 2009) ("The purpose of the third *Grinnell* factor is to 'assure the Court that the counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them.'" (quoting *In re Global Crossing Securities and ERISA Litig.,* 225 F.R.D. 436, 458 (S.D.N.Y.2004))*.* Discovery need not be fully complete, or even underway, before a settlement can be approved. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). Rather, it is enough for the Parties to "have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10. In cases where discovery is completed prior to the settlement agreement, this factor weighs even more heavily in favor of approving the settlement. *See, e.g.*, *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015) (factor satisfied where litigants conducted significant discovery prior to entering negotiations, conducting in-depth interviews of dozens of class members, reviewing extensive document production, and participating in mediation and extensive settlement negotiations); *In re Citigroup*

13

*Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013) (factor satisfied where parties completed extensive discovery that included millions of pages of documents and depositions of key witnesses on both sides).

Several facts in this record demonstrate that this *Grinnell* factor supports preliminary approval. Before filing the complaints at the outset of this litigation, Class Counsel extensively investigated the alleged Conspiracy and its effects, including reviewing materials from related litigation, researching the applicable law with respect to the claims asserted in the Action and the potential defenses, and consulting with industry experts. Cramer Decl. at ¶ 8. As detailed above, an enormous discovery record has been compiled, and both fact discovery and expert discovery concluded prior to the Parties' entering into the Settlement. Also prior to agreement on the Settlement, the Parties fully briefed Defendants' motions to dismiss, Plaintiffs' motion for class certification, Defendants' *Daubert* motions, and numerous discovery motions. Finally, the settlement negotiations were accompanied by frank discussions of the relative strengths and weaknesses of the Parties' claims and defenses. *Id.* at ¶ 20. The information gained through these various endeavors have provided Plaintiffs with a comprehensive understanding of the relative strengths and weaknesses of their case that has enabled Plaintiffs to negotiate a settlement believed to be an excellent result for the Settlement Class. *Id.* Therefore, the third *Grinnell* factor supports preliminary approval of the Settlement.

### 3. The Settlement Amount is Fair, Reasonable, and Adequate in Light of the Risks of Further Litigation.

The Settlement is fair and reasonable in light of the risks. "In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *In re Top Tankers, Inc. Sec. Litig.*, No. 06-CV-13761-CM, 2008 WL 2944620, at *4 (S.D.N.Y. July 31, 2008) (quoting *Grinnell*,

495 F.2d at 463). Final approval of the Settlement ensures a certain recovery of $80 million in cash for the Settlement Class, whereas continuing to litigate the Action would present numerous significant risks.

Plaintiffs' Motion for Class Certification and Defendants' two *Daubert* motions were pending before the Court at the time of Settlement. Should Plaintiffs have failed to prevail on any of those class-related motions, the case may have effectively ended, or at minimum, would have been substantially diminished. Further, in the event that the Court denied Defendants' *Daubert* motions and granted Plaintiffs' motion to certify the Class, Plaintiffs would still face the additional hurdles of Defendants' motions for summary judgment, numerous other exclusionary motions, and a jury trial. Defendants' prior *Daubert* motions were limited to issues related to class certification, so even if the Court had denied both motions, Defendants would have had the opportunity to raise additional *Daubert* motions on issues related to the merits.

Further, even if certification of the proposed litigation class were granted, Defendants could later seek to decertify or modify the class definition prior to trial. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-CV-2207-JGK, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("There is no assurance of obtaining class certification through trial, because a court can re-evaluate the appropriateness of certification at anytime during the proceedings."). Interlocutory appeals, including of a class opinion under Fed. R. Civ. P. 23(f), at any stage of the litigation would add further uncertainty to the Action. *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 29 (2013) (reversing class certification in an antitrust case at an interlocutory stage based on flaws in the damages model). Plaintiffs allege in the SCCAC that Defendants had fraudulently concealed the alleged Conspiracy and therefore that Defendants are liable for damages dating back as far as 2009. SCCAC ¶¶ 182-92. If Defendants had succeeded in defeating this fraudulent

15

concealment argument, Plaintiffs would have been limited to damages accruing from 2012 (four years prior to the filing of the first complaint in this Action) rather than 2008 (the Class Period defined in the SCCAC and in the proposed Settlement), which would have substantially reduced the amount of damages that Plaintiffs could recover at trial even if they prevailed on the merits.

Furthermore, as described above, two separate related actions are currently pending against some of the Defendants (*SourceOne* in this Court and *Archer & White* in the Eastern District of Texas), and Defendants are currently in trial in the FTC action. The pendency of those actions adds further risk here. For example, because many of SourceOne's factual allegations overlap with Plaintiffs' allegations in this Action, an adverse ruling for SourceOne could negatively impact Plaintiffs' chances of prevailing. A ruling in favor of Defendants in the FTC action could similarly harm Plaintiffs' case.

The outcome of a trial involving complex facts and untested legal theories is invariably unpredictable. In any complex case, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85-CV-3048-JMW, 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987). Even assuming that Plaintiffs could establish Defendants' liability at trial, "[t]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 476. Accordingly, this factor supports granting preliminary approval.

### 4. The Defendants' Ability to Withstand a Greater Judgment Does Not Weigh Against Settlement.

The next *Grinnell* factor, examining whether a defendant can withstand a greater

judgment, also supports granting preliminary approval. Benco is a small private company whose ability to pay a large judgment would be in doubt. Defendants Henry Schein and Patterson may be able to withstand a greater judgment, but this factor alone provides no basis for rejecting a settlement. *See In re IMAX Securities Litig.*, 283 F.R.D. at 191 ("[T]his factor, standing alone, is not sufficient to preclude a finding of substantive fairness where the other factors weigh heavily in favor of approving a settlement."); *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 157 (S.D.N.Y. 2013) (approving settlement with Citigroup, despite the fact that "Citigroup could likely withstand a greater judgment"); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012) ("A defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.") (citation and quotation marks omitted); *Meredith Corp.*, 87 F. Supp. 3d at 665 ("A defendant is not required to empty its coffers before a settlement can be found adequate.") (citation and quotation marks omitted). Accordingly, this factor does not impede the Court's ability to grant preliminary approval of this settlement, which otherwise readily satisfies the Rule 23(e)(2) final approval standard that it be fair, reasonable and adequate.

### 5.    The Settlement is Reasonable in Light of the Possible Recovery and the Attendant Risks of Litigation.

The last two *Grinnell* factors "recognize[] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores, Inc.*, 396 F.3d at 119 (citation omitted). In applying these factors, "[t]he adequacy of the amount achieved in settlement may not be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *In re IMAX Securities Litig.*, 283 F.R.D. at 191 (quotation omitted); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 478

17

("Ultimately, the exact amount of damages need not be adjudicated for purposes of settlement approval."). Consequently, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2; *see also In re IMAX Securities Litig.*, 283 F.R.D. at 192 ("[T]he Second Circuit 'has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought.'" (quotation omitted)).

Plaintiffs' expert econometrician, Dr. McClave, calculated classwide damages estimates for each year from January 1, 2009 to March 31, 2016. *See* ECF No. 265-2 (Expert Report of James T. McClave, Ph.D.), at 11. As noted above, Plaintiffs expect that if the case had proceeded to the summary judgment stage, Defendants would have argued that fraudulent concealment does not apply, in which case Plaintiffs would have been limited to damages accruing from 2012 (four years prior to the filing of the first complaint in this Action). Assuming that damages were limited to the period of January 1, 2012 to March 31, 2016, Dr. McClave's calculated damages would have been reduced by approximately 40 percent. *See id.* Further, Defendants' briefs in opposition to class certification and in support of their *Daubert* motion to exclude Dr. McClave's damages and impact methodologies highlight the risks of proceeding to trial.

In contrast, the Settlement, if approved, would provide guaranteed cash compensation to Settlement Class members who do not opt out. The fact that the cash will be paid in the near future weighs in favor of approval. *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). As explained above, the potential risks, an assessment of the strength of the claims and defenses, the possible complications that may arise from future changed circumstances, and the vigorous negotiation at arm's length on

behalf of the proposed Class are all additional factors that place the amount of the recovery in richer context. When balancing these factors in analogous class cases, courts have approved settlements that represent small fractions of the anticipated total losses or harm.[6] In light of the risks of continuing to litigate this Action detailed above, the final *Grinnell* factors weigh in favor of approval.

## IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

Pursuant to Rules 23(a) and (b)(3), Plaintiffs respectfully request certification of the proposed Class for settlement purposes. A court asked to certify a class for settlement purposes "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The court's focus instead is "on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 621. The court must engage in a rigorous analysis to ensure the Rule 23 requirements are met, *In re Am. Int'l Grp, Inc. Sec. Litig*, 689 F.3d 229, 237-38 (2dCir. 2012), but in doing so it "must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 158 (E.D.N.Y. 2009) (citations omitted). As demonstrated below, the proposed Settlement Class is made up of a discrete and identifiable group of persons who purchased Dental Products directly from the Defendants during a limited and defined time period, and it readily satisfies the certification requirements of Rules 23(a) and (b)(3).

---

[6] *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 294-95 (E.D. Mich. 2017) (approving settlement of 2% of total possible damages); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement of 3% to 7% of total damages).

### A.      The Settlement Class Meets the Requirements of Rule 23(a)

In *Amchem*, the Supreme Court set forth the parameters of the Rule 23(a) inquiry:

> Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Amchem Products, Inc.*, 521 U.S. at 613. The proposed Settlement Class here satisfies each of

the four requirements of Rule 23(a).

### 1.      The Number of Class Members Is So Numerous That Joinder Is Impracticable.

Numerosity is satisfied where, as here, the proposed "class is so numerous that joinder of

all members would be 'impracticable.'" *See In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 99

(E.D.N.Y. 2012). Numerosity is presumed in the Second Circuit where a class consists of 40 or

more members. *See generally Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d

Cir. 1995). The members of the Settlement Class are ascertainable and identifiable. Settlement

Class members are dental practices and dental laboratories that directly purchased Dental

Products from Defendants and alleged co-conspirator Burkhart. The identities of the Settlement

Class members are readily identifiable from existing records obtained from the Defendants.

Class Counsel, in conjunction with their experts, estimate that there are approximately 200,000

members in the Settlement Class, including approximately 155,000 non-corporate purchasers of

Dental Supplies, 35,000 corporate purchasers of Dental Supplies, and 10,000 Class members that

purchased only dental equipment and did not purchase Dental Supplies. *See* Cramer Decl. at ¶

24.[7] Accordingly, the numerosity requirement is met here.

---

[7] These estimates were calculated by Plaintiffs' experts using the data produced to Plaintiffs by
Defendants. *See id*. However, because Defendants' data were produced in formats that make it difficult to

## 2.      There Are Questions of Law and Fact Common to All Class Members.

Courts consistently recognize that the commonality requirement "does not present plaintiffs with a particularly exacting standard." *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-MD-1775-JG, 2014 WL 7882100, at *30 (E.D.N.Y. Oct. 15, 2014). "A single common question of law or fact may suffice to satisfy this requirement if the question is capable of giving rise to a common answer through a class action." *Vitamin C*, 279 F.R.D. at 99. "'Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137-38 (2d Cir. 2015) (quotation omitted). Common questions "are often present where there are legal or factual disputes pertaining to the defendants' 'unitary course of conduct,' since such questions tend to give rise to answers that are broadly applicable to the entire class." *Air Cargo*, 2014 WL 7882100, at *30 (citations omitted).

The proposed Settlement Class here seeks redress for claimed injuries from paying allegedly supracompetitive prices as a result of the claimed anticompetitive Conspiracy. The challenged common course of conduct includes Plaintiffs' allegations that Defendants:

- Communicated directly, from the executive to the local level, and indirectly, through dental manufacturers, about gross margin levels and overall profitability;

- Communicated indirectly, through a third-party data aggregation company, to monitor and reinforce the Conspiracy by exchanging market share and pricing data;

- Coordinated responses to disruptive market developments, by boycotting or refusing to deal with entities that threatened margin erosion such as group purchasing organizations, Amazon.com, and low-cost distributors, and manufacturers competing with Defendants and Burkhart to sell directly to dentists; and,

- Coordinated to restrict the movement of customers from one Defendant to another by agreeing to limit and suppress the hiring of one another's sales representatives.

---

identify and rule out duplicates where Class members may have purchased from multiple Defendants, Class Counsel believes that these estimates may be somewhat inflated. *Id.*

*See* SCCAC at ¶¶ 45-48, 75-77, 87. Because each Settlement Class member has an interest in establishing the challenged course of common conduct, including "the existence, scope and efficacy of an alleged antitrust conspiracy," the commonality requirement of Rule 23(a)(2) is met. *See In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 562 (S.D.N.Y. 2004).

### 3.      Plaintiffs' Claims Are Typical of Those of the Settlement Class.

The proposed Settlement Class also satisfies the test for typicality, which "focuses on whether the named plaintiff's interests align with the interests of the rest of the class," *Vitamin C*, 279 F.R.D. at 105. "The typicality criterion does not require complete symmetry between the class representative's claims and those of the absent class members." *Id.* "Rather, the named plaintiff must simply raise claims that 'arise from the same course of events' as the class claims and make 'similar legal arguments to prove the defendant's liability.'" *Id.*; *see also Reid v. SuperShuttle Int'l, Inc.*, No. 08-CV-4854-JG-VVP, 2012 WL 3288816, at *4 (E.D.N.Y. Aug. 10, 2012) (typicality requirement is met where "the named Plaintiffs' claims are for the same type of injury under the same legal theory as the rest of the class"). "'[F]actual differences in the amount of damages, date, size or manner of purchase, the type of purchaser . . . and other such concerns will not defeat class certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class.'" *Air Cargo*, 2014 WL 7882100, at *31. To the extent that differences exist as to the damages suffered by each potential class member, such disparities do not preclude a finding of typicality. *See Labbate-D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456–57 (E.D.N.Y. 1996).

As discussed with respect to the commonality requirement above, all Settlement Class members are pursuing the same antitrust claims based on the same legal theories and seek redress for the overcharges allegedly caused by the same challenged course of conduct.

Accordingly, the Rule 23(a)(3) typicality requirement is met. *See Air Cargo*, 2014 WL 7882100, at *33 ("Typicality in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants.") (citation omitted).

### 4. The Settlement Class Is Adequately and Fairly Represented.

"'Determination of adequacy typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Air Cargo*, 2014 WL 7882100, at *33. A conflict between proposed class representatives and the Class "will not destroy adequacy under Rule 23 unless the conflict is 'fundamental' and concrete: conflicts which are merely 'speculative . . . should be disregarded at the class certification stage.'" *Vitamin C*, 279 F.R.D. at 102. Here, there is no conflict: each class representative claims to have been overcharged on Dental Products as a result of the alleged Conspiracy.

No fundamental conflict exists between Plaintiffs and members of the Settlement Class here because Plaintiffs hold the same damages claims as the members of the Classes that they seek to represent: all claim to have been overcharged due to the alleged Conspiracy. Plaintiffs have effectively represented the interests of the proposed Settlement Class by selecting qualified Class Counsel, regularly communicating with Class Counsel regarding developments in the litigation, preparing for and attending depositions, communicating with Class Counsel regarding the terms of the Settlement, and approving those terms. Neither Plaintiffs nor Class Counsel have any interests antagonistic to those of the proposed Classes. As described above, Class Counsel are among the most highly experienced firms in the country in litigating complex antitrust class actions. Therefore, the adequacy of representation requirement is satisfied.

**B.      The Settlement Class Meets the Requirements of Rule 23(b)(3)**

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b). *See Larsen v. JBC Legal Grp., P.C.*, 235 F.R.D. 191, 196 (E.D.N.Y. 2006). Certification of a class under Rule 23(b)(3) requires that: (i) common issues predominate over individual issues; and (ii) the class action mechanism be superior to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). For the reasons described below, both requirements are met here.

Unlike with motions for class certification in the litigation context, a court "[c]onfronted with a request for settlement-only class certification . . . need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Products, Inc.*, 521 U.S. at 620 (internal citation omitted); *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d at 242 ("[T]he existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis."). The court's focus instead is "on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Amchem Products, Inc.*, 521 U.S. at 621. The court is still required to ensure the Rule 23 requirements are met for a settlement class, but in doing so the court "must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class." *Cohen*, 262 F.R.D. at 158 (citations omitted).

**1.      Common Questions of Law and Fact Predominate.**

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quotation

omitted). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quotation omitted). "In short, the question for certifying a Rule 23(b)(3) class is whether 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof' and whether 'these particular issues are more substantial than the issues subject only to individualized proof.'" *Johnson*, 780 F.3d at 139 (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013)).

This analysis differs depending on whether the certification is sought for litigation or settlement purposes. In the former, the court must determine whether litigating the class claims will pose "intractable management problems," but in the latter these management concerns "drop out" because with settlement the "proposal is that there be no trial." *AIG*, 689 F.3d at 240. In the settlement context, the predominance "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem Products, Inc.*, 521 U.S. at 623. As the Supreme Court has noted, in a settlement context "the predominance requirement of Rule 23(b)(3) is similar to the requirement of Rule 23(a)(3) that 'claims or defenses' of the named representatives must be 'typical of the claims or defenses of the class.'" *Id.* at n. 18. As described above in Section IV.A.3, that is the case here.

As a general matter, "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws," *Amchem Products, Inc.*, 521 U.S. at 625, because they present issues that are capable of proof by generalized evidence that "are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir.

2015). Predominance, however, does not require that all issues be common; it is enough that issues of liability predominate "even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001). Accordingly, courts regularly certify antitrust class action claims under Rule 23(b)(3), in both litigation and settlement contexts, because issues concerning conspiracy and monopoly are shared by all class members and these will predominate in any test of liability.[8]

Here, the claims of Plaintiffs and the members of the proposed Settlement Class focus on the same operative set of facts and legal theories. The Settlement Class members were all allegedly harmed by Defendants' conduct, and the evidence of that conduct is entirely common to the Settlement Class. All Class members would have to prove liability for this anticompetitive conduct, including the existence of the Conspiracy, the impact of the Conspiracy on the Class members, and the aggregate damages resulting from the Conspiracy, through the use of generalized evidence. *See Air Cargo*, 2014 WL 7882100, at *38 ("All of this evidence is indisputably 'common' because it focuses on the allegedly unlawful actions of the defendants, not the actions of the individual plaintiffs."). In sum, the predominance requirement for a settlement class is clearly met here as "[a]ll plaintiffs [] claim injury that by reason of defendants' conduct . . . has caused a common and measurable form of economic damage"

---

[8] *See, e.g.*, *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007) (finding predominant "all factual and legal questions that must be resolved to decide whether, assuming a plaintiff paid supracompetitive prices, that payment was caused by the defendants' antitrust violation and constitutes the kind of injury with which the antitrust laws are concerned"); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014) ("In price-fixing cases, courts have regarded the existence of a conspiracy as the overriding issue even when the market involves diversity in products, marketing, and prices."); *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998) ("[P]rice-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy.") (citation omitted); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996) ("Courts repeatedly have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present.").

because "[a]ll claims arise out of the same course of defendants' conduct; all share a common nucleus of operative fact, supplying the necessary cohesion." *AIG*, 689 F.3d at 240 (citation omitted).[9] Because the Settlement Class members' claims and damages arise out of the same alleged anticompetitive conduct, the issues relating to settlement are sufficiently common to satisfy the Rule 23(b)(3) predominance requirement for settlement purposes.

### 2.    A Class Action is the Superior Method for Resolving this Case.

The second element of the Rule 23(b)(3) analysis is that the class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement is met where, as here, "it would be prohibitively expensive for class members with small claims to proceed individually." *Vitamin C*, 279 F.R.D. at 109. As this Court has recognized, proving that an "alleged conspiracy affected the market price of [the relevant products] will require significant fees toward expert analysis and testimony," as well as numerous and expensive depositions. *Id*. A class action is also the superior method of adjudicating the controversy where the risks of "repetitious litigation" and "inconsistent adjudications" would arise if the claims were brought separately. *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 354 (E.D.N.Y. 2006).

Here, the substantial time and expenses that Class Counsel have already devoted to litigating this Action clearly demonstrate that the cost of litigating antitrust claims on an individual basis would be prohibitive. The Settlement Class is comprised mostly of small private

---

[9] As set forth in Plaintiffs' Motion for Class Certification, common questions of law and fact predominate for each element of Plaintiffs' claims, including proof of the conspiracy, common impact, and classwide damages. *See* ECF No. 264 at 21-33. However, such a showing is not required for the Court to grant preliminary approval of the Settlement Class proposed here. *See, e.g.*, *In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2016 WL 3584632, at *8 (E.D. Pa. June 30, 2016) (holding that predominance may be satisfied for purposes of certifying a settlement class under Rule 23(b)(3) even if the plaintiffs have not established antitrust impact because antitrust impact is a trial management issue).

dental practices whose claims "will [] be small relative to the costs of maintaining this litigation." *Vitamin C*, 279 F.R.D. at 109. Additionally, because the claims of all Settlement Class members are based on the same alleged anticompetitive conduct by the same Defendants during the same time period, bringing the claims of all Settlement Class members separately rather than on a classwide basis would create the risk of inconsistent rulings across thousands of separate repetitious actions. Accordingly, because certifying the proposed Settlement Class represents "an efficient means of resolving the claims at issue," *Bourlas*, 237 F.R.D. at 354, the superiority requirement is satisfied.

### C.    Interim Co-Lead Counsel Should be Appointed Co-Lead Settlement Class Counsel

A court that certifies a settlement class must appoint class counsel. Fed. R. Civ. P. 23(g). In appointing class counsel, the Court "(A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class [and] (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1). The Court must also determine that class counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Here, the Court has already appointed Berger Montague PC, Cohen Milstein Sellers & Toll PLLC, Hausfeld LLP, and Susman Godfrey LLP as Interim Co-Lead Class Counsel.[10]   As described above, these firms have devoted substantial time and

---

[10] Overviews of the qualifications of Berger Montague PC, Cohen Milstein Sellers & Toll PLLC, Hausfeld LLP, and Susman Godfrey LLP are available on their respective websites, at www.bergermontague.com/about-us/history/, www.cohenmilstein.com/practice-area/antitrust, www.hausfeld.com/practice-area/antitrust-competition, and www.susmangodfrey.com/practice-areas/class-action/.

resources to this case, and will continue to do so to ensure the Settlement is effectuated and claims are paid fairly and efficiently. Accordingly, the Court should remove the "interim" designations and appoint the same firms as Settlement Class Counsel.

## V.      BOTH THE NOTICE PLAN AND PLAN OF ALLOCATION ARE REASONABLE

### A.      The Notice Plan

Co-Lead Counsel, together with the proposed Settlement Administrator, Heffler Claims Group (the "Settlement Administrator"),[11] have devised a notice program and prepared mail and publication notices that fully satisfy the Rule 23(c)(2)(B) notice standards, which govern classes certified pursuant to Rule 23(b)(3). *In re IMAX Securities Litig.*, 283 F.R.D. at 185 (notice requirements for Rule 23(b)(3) classes stricter than for Rule 23(b)(2) classes) (citing *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. at 448). Rule 23(c)(2)(B) requires the court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.*; *see also Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 67 (S.D.N.Y. 2003) ("Although no rigid standards govern the contents of notice to class members, the notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (internal quotation marks omitted)).

As required by Rule 23(c)(2)(B), the long form and short form notices, attached

---

[11] Plaintiffs submit that Heffler Claims Group is a highly respected claims administration group with more than 50 years of experience administering class action settlements. *See* Cramer Decl. ¶ 27. The same team of notice and administration experts that handled these functions in the *Air Cargo* matter are now with Heffler Claims Group and are working with Class Counsel on this case. *See* Cramer Decl. Ex. D (Declaration Of Jeanne C. Finegan, Apr, Concerning Ability to Provide Adequate Notice to Settlement Class Members Through Direct Notice Methods and Proposed Multi-Media Notice Program) ("Finegan Decl."), at ¶ 4.

respectively as Exhibits B and C to the Cramer Decl., state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class that is being certified; (iii) the class claims, issues, or defenses; (iv) the basic terms of the Agreement; (v) that a class member may enter an appearance through an attorney if the member so desires; (vi) that the Court will exclude from the class any member who requests exclusion; (vii) the time and manner for requesting exclusion; (viii) the binding effect of a class judgment on members and the terms of the releases;[12] (ix) the claim filing process and a description of the Plan of Allocation; and (x) the requests for an award of attorneys' fees, reimbursement of costs and an award to the Class Representatives. The Notice further directs Settlement Class members to the case website and provides contact information for the Settlement Administrator.

Notice regarding a proposed settlement is adequate under both Rule 23 and due process standards if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," *Hall v. ProSource Techs., LLC*, No. 14-CV-2502-SIL, 2016 WL 1555128, at *4 (E.D.N.Y. Apr. 11, 2016) (citation omitted), and it can "be understood by the average class member," *Wal-Mart Stores, Inc.*, 396 F.3d at 114 (citation omitted).

In this case, the Notice Plan was prepared with the aid of an experienced Settlement Administrator and provides for widespread direct mailed notice and published notice, robust media coverage, and a comprehensive settlement website. *See* Finegan Decl. ¶ 13.[13] Plaintiffs already have the names and contact information for all or nearly all of the Class members from the data produced by Defendants and Burkhart, which will enable the Settlement Administrator to mail short-form notice to all Class members in those databases efficiently and accurately. *See*

---

[12] The long form Notice includes the full text of the release.

[13] The settlement website will be available at www.DentalSupplyAntitrustSettlement.com.

*id.* ¶ 14. For purposes of efficiency and to limit expenses associated with administering the Notice Plan, Plaintiffs propose to mail a short-form notice form to all Class members in those databases, and that such forms will reference the long-form notice, direct recipients to the settlement website, and include a toll-free phone number for Class members to call with any questions. *See* Cramer Decl. ¶ 28. Long-form notices will be mailed upon request, and Class members can request mailed materials through the settlement website as well as the toll-free number. *See id.*; Finegan Decl. ¶ 13. Courts have routinely approved similar notice plans involving both direct mail and publication notice through various media.[14] Accordingly, Plaintiffs respectfully request that the Court approve the proposed form and plan of dissemination of notice.

## B.      The Plan of Allocation

Co-Lead Counsel have also prepared a Plan of Allocation to equitably and fairly allocate proceeds of the Settlement to Settlement Class members. *See* Cramer Decl. Ex. E (Declaration of James T. McClave, Ph.D. Concerning Proposed Dental Litigation Settlement Allocation Plan). A plan for allocation need only "have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Meredith*, 87 F. Supp. 3d at 667 (citation omitted); *see also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d at 385 (same). The proposed allocation

---

[14] *See, e.g.*, *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *2 (approving notice plan that included direct mail, publication in periodicals, internet and social media advertisements, and a settlement website); *Air Cargo*, 2009 WL 3077396, at *3 (approving notice plan that included direct mail, publication in periodicals and other media outlets, and a press release announcing the settlement); *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. at 448 (approving notice plan that included direct mail, publication in newspapers, and a settlement website); *see also In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y.1996) (approving individual notice to class members "whose address could reasonably be located" and summary notice published in national newspapers); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 167–69 (2d Cir. 1987) (approving letter notice to reasonably identifiable class members, supplemented by "various forms of substitute notice," including publication in various media).

plan (the "Plan"), which Plaintiffs will present to the Court for approval at the final fairness hearing, meets this standard.

Plaintiffs developed the Plan in conjunction with Dr. McClave, the econometrician who submitted two expert reports on behalf of Plaintiffs in the matter. *See* Cramer Decl. ¶ 26. In short, the Plan calls for allocating the Settlement Fund, net of Court-approved attorneys' fees, reimbursed costs, incentive awards to the named Plaintiffs, and appropriate taxes and costs of administration (the "Net Settlement Fund") on a *pro rata* basis based on the purchases, in dollars, made by Class members making claims ("Claimants") during the Class Period. *See* Cramer Decl. Ex. E. The Claimants will be broken into two main groups: private practices and labs, on the one hand, and corporate practices (also called DSOs), on the other. According to Dr. McClave's analysis, corporate purchasers were relatively insulated from the challenged conduct, and thus the alleged harm each incurred from each purchase would be less than that incurred for each private purchase.[15] The Plan proposes, therefore, to weight private purchases substantially more than corporate purchases in computing *pro rata* shares. *See* Cramer Decl. Ex. E. The proposed Settlement Class includes direct purchasers of dental equipment as well as Dental Supplies. *See* Settlement at Sec. II ¶ 10; *id.* at Sec. III ¶ 1.[16]

---

[15] Expert Report of Dr. James T. McClave, September 19, 2017, at 2 n.1 ("My statistical analysis suggests that DSOs may have escaped some or all of the impact of the anticompetitive conduct alleged herein, as pricing to DSOs appears to have been more competitive, other factors being equal, than pricing to private dental practices and laboratories.").

[16] For a variety of reasons, even though Plaintiffs had asserted dental equipment-based claims in the complaint, and had been relying in their expert reports and class papers on evidence purporting to show that the alleged Conspiracy involved and affected dental equipment sales, Plaintiffs did not seek damages for dental equipment purchases in their Motion for Class Certification. ECF Nos. 263-65. Nevertheless, any judgment in this matter, by settlement or otherwise, would likely have extinguished claims related to purchases of dental equipment. Thus, because the claims and the complaint encompassed dental equipment purchases, the Settlement proposes to release those claims as well. As far as *pro rata* allocation is concerned, because nearly all Class members purchase both Dental Supplies and dental equipment, the Plan proposes to rely almost exclusively on data reflecting purchases of Dental Supplies for the allocation to Claimants. This is fair both because nearly all Claimants will have purchased Dental Supplies and also because Plaintiffs' class certification expert analysis did not focus on estimating

In sum, the Plan is a logical, straightforward, and equitable allocation of a large fund to a large class. *See, e.g.*, *Meredith Corp.*, 87 F. Supp. 3d at 667 (approving *pro rata* plan of allocation because it "has an obvious rational basis, appears to treat the class members equitably, . . . and has the benefit of simplicity"); *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. at 135 (*pro rata* allocation provides "a straightforward and equitable nexus for allocation"). The Plan accounts for the relative strengths and weaknesses of the claims of different categories of Class members, while ensuring that all valid Claimants receive a *pro rata* share of the Net Settlement Fund. For the reasons described above, the Notice Plan also satisfies the requirements for Court approval. Therefore, the Court should preliminarily approve the Settlement and authorize notice to the Settlement Class.

## VI.  PROPOSED SCHEDULE FOR SERVICE OF NOTICE, MOTIONS FOR FEES AND SERVICE AWARDS, CLASS EXCLUSIONS, OBJECTIONS, AND FAIRNESS HEARING

As set out in the Proposed Order, Plaintiffs propose the following schedule:

---

damages related to purchases of dental equipment. And it is efficient because the dental equipment data in our possession is massive and complex. There is one caveat: According to Dr. McClave's evaluation of the data, a very small portion of the Class is comprised of persons who purchased only dental equipment and no Dental Supplies. Accordingly, The Net Settlement Fund will be allocated as follows: 0.75% of the Net Settlement Fund will be allocated to this dental equipment-only group. Allocation within that group will be accomplished *pro rata* based on net purchases in dollars.

| Event | Timeline |
|---|---|
| Commencement of Direct Notice to the Class | Within 45 days of the Court's entry of the Preliminary Approval Order ("Order Date"). |
| Commencement of Publication Notice to the Class | Within 45 days of the Order Date. |
| Submission of motion for attorneys' fees, expenses, and service awards for the class representatives. | Within 75 days of the Order Date. |
| Deadline for Class Members to Opt- Out of the Class or Object to the Settlement | Within 100 days of the Order Date. |
| Plaintiffs' Notice to Court Identifying Persons or Entities Requesting Exclusion from the Class and Completion of the Notice Program | Within 115 days of the Order Date. |
| Submission of motion and memorandum in support of final approval of the Settlement and any responses by the parties to any objections filed by and Class members. | Within 115 days of the Order Date. |
| Fairness Hearing | On a date to be set by the Court, but no earlier than 130 days from the Order Date. |
| Claims Deadline | Within 120 days of the Fairness Hearing. |

This schedule is fair to Class members. It gives Class Members 55 days to review the preliminary approval papers and Settlement before deciding whether to object or opt out. And it gives more than three weeks for Class Members to consider the attorneys' application for fees, expenses, and Class Representative service awards before deciding whether to object to any or all of them. Accordingly, Plaintiffs respectfully request that the Court issue the Proposed Order establishing the schedule set forth therein.

## VII.   <u>CONCLUSION</u>

For all of the reasons stated above, Class Counsel respectfully submit that both preliminary approval of the Settlement and certification of the proposed Settlement Class are appropriate, and that the Court should appoint interim Co-Lead Class Counsel as Settlement Class Counsel.

Dated: November 12, 2018

Respectfully submitted,

*/s/ Eric L. Cramer*
Eric L. Cramer
Joshua T. Ripley
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tele: (215) 875-3000
Fax: (215) 875-4604
Email: ecramer@bm.net
Email: jripley@bm.net

*Co-Lead Class Counsel*

Brent W. Landau
Gary I. Smith, Jr.
HAUSFELD LLP
325 Chestnut St., Suite 325
Philadelphia, PA 19106
Tele: (215) 985-3270
Fax:  (215) 985-3271
Email: blandau@hausfeld.com
Email: gsmith@hausfeld.com

*Co-Lead Class Counsel*

Jonathan Jeffrey Ross
SUSMAN GODFREY LLP
1000 Louisiana
Suite 5100
Houston, TX 77002
Tele: 713-651-9366
Fax: 713-654-6666
Email: jross@susmangodfrey.com

William Christopher Carmody
SUSMAN GODFREY LLP
560 Lexington Avenue, 15th Fl.
New York, NY 10022
Tele: (212) 336-8330
Fax: (212) 336-8340
Email: bcarmody@susmangodfrey.com

*Co-Lead Class Counsel*

Richard A. Koffman
Jessica Weiner

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., NW, Suite 500
Washington, DC 20005
Tele: (202) 408-4600
Fax: (202) 408-4699
Email: rkoffman@cohenmilstein.com
Email: jweiner@cohenmilstein.com

*Co-Lead Class Counsel*